IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEAVIEA BROWN,<br><br>Defendant. | **4:25CR3029**<br><br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on Defendant's Motion to Suppress. Filing No. 31. Defendant moves the Court to suppress all evidence obtained as a result of the January 14, 2025 search warrant ("the Warrant"). He contends information contained within the Warrant, primarily evidence obtained during an allegedly unconstitutional vehicle search, was included in, and critical to, the probable cause finding for the Warrant. A hearing on the motion was held on December 5, 2025. At that time, the Court ordered a transcript of the hearing and deemed the matter submitted upon receipt of the transcript. A transcript of the proceedings has been filed, Filing No. 52, and the motion is now ripe for disposition.

**BACKGROUND**

After hearing the testimony of the witnesses and reviewing the exhibits submitted at the motion to suppress hearing, the undersigned finds the following facts are credible.

1

Investigator Joseph Villamonte is an investigator for the Lincoln Police Department and a member of the Safe Streets Task Force investigating crime relating to gang activity, violent crime, homicides, and narcotics offenses. Filing No. 52 at 55. Based on his work in prior investigations, dating back to 2018, Investigator Villamonte was familiar with Defendant. Filing No. 52 at 55-56. Investigator Villamonte conducted a narcotics and firearms investigation of Defendant from 2023 into 2025. Filing No. 52 at 56. As part of this investigation Investigator Villamonte observed Defendant's social media accounts including Snapchat and Instagram. Filing No. 52 at 57. Investigator Villamonte observed posts that, based on his training and experience, were consistent with narcotics sales. In addition to the narcotics related posts, Investigator Villamonte observed Defendant post what appeared to be firearms on two separate occasions. Filing No. 52 at 59. Investigator Villamonte knew Defendant to be a convicted felon. *Id*.

Investigator Villamonte was aware of the June 23, 2023 attempted traffic stop linked to Defendant during which officers located narcotics. Investigator Villamonte was not involved in that investigation but included the information in his warrant application. Filing No. 52 at 63. Investigator Villamonte's observations of Defendant's social media posts relating the drugs and firearms were made both before and after the attempted stop of the white Cadillac Escalade on June 23, 2023. Investigator Villamonte testified that he would have still applied for the Warrant based on his investigation of Defendant even if the June 23, 2023 stop had not occurred. Filing No. 52 at 64-65.

Based on Investigator Villamonte's investigation, he authored an affidavit and applied for the Warrant. On January 14, 2025, a Lancaster County, Nebraska judge issued the Warrant for 3139 North Hill Road #106, Lincoln, Nebraska (the "Residence") and a white 2003 Cadillac Escalade with license plate number YZI 480 (the "Vehicle"). The Warrant authorized law enforcement to search for and seize items related to controlled substances and firearms. Filing No. 46-3 at 5-6.

2

Investigator Villamonte signed the affidavit in support of the Warrant. *Id.* at 7-12. In relevant part, the affidavit sets forth the following information:

- Villamonte knew Defendant had previously been found guilty of a felony.

- Villamonte observed posts on Defendant's social media accounts which he knew, in his experience, to signify narcotic sales. These posts occurred on April 5, 2023; April 8, 2023; April 14, 2023 and January 9, 2025. Villamonte observed additional posts that appeared related to the sale of narcotics on April 6, 2023 and April 19, 2023.

- On June 23, 2023 Nebraska State Patrol Trooper McGrew attempted to conduct a traffic stop on a Cadillac Escalade[1] for speeding. McGrew reported the driver took evasive action to elude him and McGrew was eventually able to locate the vehicle in a bank parking lot. When McGrew contacted the vehicle, he heard someone running through dense brush near the bank. McGrew requested a tow truck for the vehicle and eventually conducted a search of the Escalade. During the search, McGrew located: information tying the Escalade to Defendant, ammunition, controlled substances, and other items commonly associated with narcotics.

- On December 28, 2024, Villamonte observed a social media post on Defendant's account in which Defendant appeared to be sitting in his residence with the handle of a handgun protruding out of his pocket as well as an extended magazine attached to the firearm.

- On December 30, 2024, Villamonte observed Defendant post a video to his social medial account in which Defendant is wearing what appears to be a bullet proof vest and in possession of a handgun.

- On December 30, 2024, Villamonte had contact with two separate confidential informants who both advised Defendant was a "source for marijuana" and one advised Defendant was a "source for THC cartridges." One source advised they had observed Defendant on social media in possession of a firearm. Both confidential informants had provided consistent corroborating information in the past.

- Investigators had conducted physical surveillance on the Residence and observed Defendant arrive and leave the Residence on numerous

---

[1] It is unclear, from the information in the affidavit, whether this is the same Escalade officers searched pursuant to the Warrant as the license plate numbers are different.

3

occasions, entering the Residence without knocking on the door and changing clothes inside of the Residence before leaving. Investigators also saw Defendant operating the Vehicle numerous times and leaving the Residence in the Vehicle.

- Villamonte knew, from his training and experience that those involved in the sale of controlled substances will use a motor vehicle to transport controlled substances and, further, that they use their primary residence and/or places they commonly frequent to store their controlled substances for safekeeping.

Filing No. 46-3 at 7-12. Based on this information, a county court judge signed the Warrant on January 14, 2025. Filing No. 46-3 at 6.

## ANALYSIS

The parties have differing views as to what vehicle Defendant should have used to bring his request, i.e., via a motion to suppress or a motion for *Franks*[2] hearing.[3] It is both. The traditional context of *Franks* differs from the present context—the affidavit in *Franks* did not include information derived from a Fourth Amendment violation but instead included facts fabricated by police. *See United States v. Swope*, 542 F.3d 609, 614 (8th Cir. 2008). In contrast, as is alleged here, a warrant obtained after an illegal search implicates the independent source doctrine. *Murray v. U.S.*, 487 U.S. 533 (1988). Defendant's arguments relating to the Warrant also include information not obtained during the allegedly illegal search. Thus, a traditional *Franks* analysis applies to these issues.

The independent source doctrine provides that evidence initially discovered during an unlawful search, but later obtained independently through activities

---

[2] *Franks v. Delaware*, 438 U.S. 154 (1978).

[3] The Government argued that the Court was not required to hold a hearing at all. But the Eighth Circuit has held in the context of the independent source doctrine the Court "may not infer from the circumstances that the police inevitably would have sought a warrant; findings of fact by the district court are required." *United States v. Rodriguez*, 834 F.3d 937, 942 (8th Cir. 2016) (quoting *United States v. Leveringston*, 397 F.3d 1112, 1115 (8th Cir. 2005); *see also United States v. Khabeer*, 410 F.3d 477 (8th Cir. 2005); *United States v. Green*, 9 F.4th 682 (8th Cir. 2021).

untainted by the illegality may be admitted into evidence. *Murray*, 487 U.S. at 537. To establish that the independent source doctrine applies to evidence seized pursuant to a search warrant after an illegal search, the government must show (1) "police [would] have applied for the warrant had they not acquired the tainted information," and (2) "the application affidavits support probable cause after the tainted information has been redacted from them." *Murray,* 487 U.S. at 542;  The second prong of this examination is akin to a traditional *Franks* analysis. *Swope,* 542 F.3d at 614.

Here, Defendant alleges the evidence obtained in the Warrant should be suppressed because the June 23, 2023 stop was a violation of Defendant's Fourth Amendment rights, and the use of the information in the Warrant renders the Warrant invalid. Thus, he contends all evidence should be suppressed. For the purposes of this motion, the Court assumes the June 23, 2023 search of Defendant's vehicle was unconstitutional. The Court considers both prongs outlined in *Murray* below. Concluding that both questions can be answered in the affirmative, the Court finds the evidence admissible.

1. Application for warrant

The Eighth Circuit explains the proper test under *Murray's* first prong is "whether the police would have applied for the warrant had they not made the prior illegal observations." *Swope,* 542 F.3d at 615. Here, the Court finds the officers would have applied for the warrant regardless of the June 2023 search, and thus, the independent source doctrine's first requirement is met.

Specifically, Investigator Villamonte testified that he would have still applied for the search warrant based upon his observations of Defendant's social media posts. Filing No. 52 at 64. The Court finds this testimony credible. The evidence contained in his affidavit and his testimony also support this conclusion. Investigator Villamonte was familiar with Defendant based on his work in narcotics

and firearms investigations dating back to 2018. Filing No. 52 at 56. He began to monitor Defendant's social media accounts in April 2023, months before the allegedly unconstitutional search. Law enforcement did not seek a warrant for Defendant's residence or vehicle immediately after the June 2023 incident. Nor did the officers or agency involved in the June 2023 incident contribute to the later investigation of Defendant. Rather, Investigator Villamonte again observed Defendant's social medial accounts in December 2024 and January 2025, observing posts where Defendant is handling what appear to be firearms and posts consistent with selling narcotics. Investigator Villamonte additionally spoke to two confidential informants about Defendant's involvement in drug sales in December 2024. Filing No. 46-3 at 10. Investigator Villamonte sought and obtained the Warrant on January 14, 2025. Filing No. 46-3 at 12.

The allegedly unlawful search is clearly attenuated from pursuit of the Warrant. Rather, police were generally familiar with Defendant and observed his social media accounts for evidence of unlawful activity both before and after the June 2023 incident. Incidents occurring in December 2024 and January 2025, over a year after the allegedly unconstitutional search, provided new information that prompted the warrant request.

2. *Franks* analysis[4]

Defendant takes issue with three pieces of evidence contained in the affidavit supporting the Warrant: 1) the information about the June 23, 2023 search of a Cadillac Escalade; 2) the alleged omission of information relating to the December 30, 2024 social media post that Defendant suggests would imply he

---

[4] Defendant appears to challenge the Warrant both under the independent source doctrine as well as a traditional *Franks* analysis. Because the analysis is the same, the Court considers both avenues together. *See Swope*, 542 F.3d at 614 (discussing that the difference between the context of independent source doctrine and *Franks* is insufficient to justify a departure from the traditional *Franks*-based redaction analysis).

was posing with a theatre prop rather than a real gun; and 3) the information provided by the confidential informants was "generalized" and did not specify whether the confidential informants purchased narcotics from Defendant. *See* Filing No. 32.

To prevail on a *Franks* claim, a defendant must: 1) make a "substantial preliminary showing" that the affidavit contains false information made deliberately or in reckless disregard for the truth; and 2) the information is necessary for a finding of probable cause. *United States v. Kattaria*, 553 F.3d 1171, 1176 (8th Cir. 2009). "The requirement of a substantial preliminary showing is not lightly met." *United States v. Hines*, 62 F.4th 1087, 1093 (8th Cir. 2023). There is a "presumption of validity with respect to the affidavit supporting the search warrant." *Id*. (quotation omitted).[5] A defendant cannot prevail on a *Franks* challenge if the warrant affidavit continues to establish probable cause after the challenged offensive portions of the affidavit are excluded and any additional alleged facts are included. *U.S. v. Carpenter*, 422 F.3d 738, 745 (8th Cir. 2005).

Here, Investigator Villamonte's affidavit establishes probable cause to search the Residence and the Vehicle even if the affidavit were to read as Defendant requests. Specifically, excluding information obtained from the June 23, 2023 search of the Escalade, including additional facts that allegedly provide context for the images of Defendant in a bullet proof vest holding a firearm, and including information that the referenced confidential informants did not personally purchase narcotics from Defendant.

---

[5] "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Hines,* 62 F.4th at 1093. Here, the Court held an evidentiary hearing to make factual findings relating to the independent source doctrine. In setting the hearing on this issue, the Court did not and does not find that Defendant met his burden to justify an evidentiary hearing relating to his *Franks* challenge. The Court does not consider the evidence presented at the December 5, 2025 hearing when conducting the analysis in this section.

Even without (and with) the at-issue information described above, the affidavit includes the following information to support a finding of probable cause: (1) seven social media posts by Defendant beginning in April 2023 and continuing through January 2025 which, based on the officer's training and experience, indicated Defendant was selling narcotics; (2) one social medial post by Defendant in which the handle of a handgun is protruding from his pocket along with an extended magazine attached to the firearm; (3) one social media post by Defendant at a recording studio in which Defendant is wearing what appears to be a bullet proof vest and in possession of a handgun; (4) Defendant was involved in rap music which included making videos; (5) information from a confidential informant who had provided reliable information to law enforcement in the past corroborating that they had observed Defendant with a firearm in his pocket on social media; (6) information from two confidential informants who had provided reliable information to law enforcement in the past that Defendant was a "source" of marijuana and THC cartridges but did not personally purchase narcotics from Defendant[6]; (7) information tying the Residence and Vehicle to Defendant; and (8) that Defendant is prohibited from possessing a firearm.

"Probable cause to issue a search warrant exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States. v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (quotation omitted). The decision of whether probable cause exists to issue a search warrant is "based upon a common-sense reading of the entire affidavit." *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quotation omitted). "[T]he probable-cause standard is a practical, nontechnical conception that deals

---

[6] The statements of the CI's, in addition to having provided prior reliable information to law enforcement, was also corroborated by the January 9, 2025 Snapchat video which was consistent with the sale of controlled substances and the social media posts in which Defendant is seen with a firearm.

8

with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (internal quotations omitted).

The undersigned finds that there was sufficient probable cause to search the Residence and Vehicle. Namely, law enforcement had information, from social media connected to Defendant, that Defendant was: (1) selling controlled substances and (2) carrying firearms. When determining probable cause, the observations of the law enforcement officer must be viewed as a whole. *United States v. Mims*, 122 F.4th 1021 (8th Cir. 2024) citing *United States v. Wallraff*, 705 F.2d 980, 988 (8th Cir. 1983). An officer's training and experience should be taken into account when determining probable cause. *Id*.; *see also* *U.S. v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009). (accepting officer's opinion that specific innocuous items were used in drug trafficking based on his experience). Conduct that appears innocuous to the lay person may be significant to an officer with training and experience. *Wallraff*, 705 F.2d at 988. Here, Investigator Villamonte's observations of the firearms support a finding of probable cause even when considering Defendant was active in the music scene. Further, Investigator Villamonte's training and experience supported his observations that Defendant's posts, even through use of emojis, were consistent with drug sales *See Mims*, 122 F.4th at 1031 (finding officer's interpretation of coded language supported probable cause).

This information was observed by law enforcement on multiple occasions and was corroborated by confidential informants who had a history of providing reliable information. The additional context proposed by Defendant, that the CIs did not personally purchase narcotics from Defendant and that Defendant was involved in rap music, do not defeat a finding of probable cause. The practical, common-sense reading of the affidavit illustrates there was a fair probability that evidence of crimes relating to controlled substances and firearms would be found in Defendant's vehicle and apartment. Probable cause exists, even when including

9

the additional facts put forth by Defendant and excluding the information relating to the allegedly illegal search on June 23, 2023.

For the reasons stated above,

IT HEREBY IS RECOMMENDED to the Honorable Susan M. Bazis United States District Judge, that defendant's motion to suppress, Filing No. 31, be denied in its entirety.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 22nd day of January, 2026.

BY THE COURT:

*s/ Jacqueline M. DeLuca*
United States Magistrate Judge