IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEAVIEA BROWN,<br><br>Defendant. | **4:25CR3029**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendant's Objection (Filing No. 62) and Supplemental Objection (Filing No. 75) to the Magistrate Judge's Findings and Recommendation dated January 22, 2026 (Filing No. 53.)  For the reasons explained below, Defendant's Objections will be overruled.

**BACKGROUND**

On January 14, 2025, Lincoln Police Department Investigator Joseph Villamonte ("Investigator Villamonte") applied for a warrant to search a residence located at 3139 North Hill Road #106, Lincoln, Nebraska (the "Residence") and a white 2023 Cadillac Escalade with Nebraska license plate number YZI480 (the "Vehicle").  (Filing No. 46-3; Ex. 3.) The affidavit that Investigator Villamonte's used to support the warrant (Filing No. 46-3; Ex. 3) contained information about a June 23, 2023 traffic stop and search of a white Cadillac Escalade that had been tied to Defendant, was well as information about Defendant's social media activity, statements from two confidential informants about Defendant's alleged involvement in drug activity, and information about Defendant's alleged connection to the Residence and the Vehicle. The affidavit also stated that Investigator Villamonte knew Defendant was a convicted felon.

(Filing No. 46-3; Ex. 3.)   Based on this information, a county court judge signed a warrant on January 14, 2025—which was executed the same day.  (Filing No. 46-3; Ex. 3.)  During the search, law enforcement located marijuana, cash, a firearm, ammunition and Defendant's phone.  (Filing No. 46-3; Ex. 3.)

On March 18, 2025, Defendant was charged with being a felon in possession of a firearm, possession with intent to distribute marijuana, and possession of a firearm in furtherance of a drug trafficking crime.  (Filing No. 1.)  Defendant's court-appointed counsel filed a Motion to Suppress the evidence obtained as a result of the January 14, 2025 search.  (Filing No. 31.)  Defendant argued that the evidence derived from the warrant should be suppressed because the June 23, 2023 search of the Escalade was illegal, and that the use of that information in the affidavit rendered the warrant invalid. Defendant also took issue with the fact that certain information was omitted from the affidavit. The omitted information related to a December 30, 2024 social media post taken at a studio that—according to Defendant—implied he was posing with a theatre prop for rap videos, rather than posing with a real gun.  Moreover, Defendant maintained that the affidavit should have made clear that information from the confidential informants was "generalized" and did not indicate whether the informants had purchased marijuana from Defendant or if this information was just based on rumor.  (Filing No. 31.)

A hearing on Defendant's Motion to Suppress was held before the Magistrate Judge on December 5, 2025. (Filing No. 47.) On January 22, 2026, the Magistrate Judge issued the Findings and Recommendation at issue, recommending that Defendant's Motion to Suppress be denied. (Filing No. 53.)  The Magistrate Judge assumed without deciding that the search of the Escalade on June 23, 2023 was unconstitutional. The Magistrate Judge determined, however, that there was sufficient probable cause to search the Residence and Vehicle, even excluding the information related to the June 23, 2023 search, and including the additional facts put forth by Defendant.[1]

---

[1] As stated by the Magistrate Judge, the parties had different views as to what procedural vehicle Defendant should have used to request the exclusion of the evidence—a motion to suppress or a motion for *Franks* hearing.  (Filing No. 53.) The Magistrate Judge determined that Defendant's arguments implicated both and therefore undertook an analysis of the independent source doctrine using *Murray v. United States*, 487 U.S. 533 (1988) and also *Franks v. Delaware*, 438 U.S. 154 (1978). "The independent source doctrine allows admission of evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality." *United Staes v. Green*, 39 F.4th 510, 513 (8th Cir. 2022) (quotation omitted). "To prevail under the independent source doctrine, the government must show that: (1) law enforcement would have sought a warrant to seize the evidence even if the unlawful search never occurred, and (2) probable cause supported the warrant after

Defendant filed his Objection to the Magistrate Judge's Findings and Recommendation on February 27, 2026.  (Filing No. 62.) Defense counsel then moved to hold the ruling on Defendant's Objection in abeyance because he wished to withdraw from the case.  (Filing No. 66.)  The Motion to Withdraw (Filing No. 64) was granted and Defendant's Objection was held in abeyance pending appointment of new defense counsel (Filing No. 70).  New defense counsel entered an appearance on March 12, 2026 (Filing No. 72) and asked for leave to submit supplemental briefing regarding Defendant's Objection to the Magistrate Judge's Findings and Recommendation.  This request was granted, and the Court gave counsel until May 6, 2026 to file the supplemental briefing.  (Filing No. 74.)  Defendant submitted a Supplemental Objection—along with supplemental briefing—on May 6, 2026.  (Filing No. 75.)  The Government filed a Supplemental Response on May 27, 2026. (Filing No. 76.)  This matter is now ripe for disposition.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1), when a party objects to a proposed findings of fact and recommendation by a magistrate judge, the Court must "make a de novo determination of those portions . . . to which objection is made." *Id. See also Gonzales-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir. 2001) ("When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections . . ."). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see* Fed. R. Crim. P. 59(b)(3). If desired, a reviewing district court judge may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

When a party contests a magistrate judge's findings that resulted from an evidentiary hearing, the reviewing district court judge does not need to conduct another hearing. *See United*

---

excluding all information obtained by the unlawful search." *Id*.  *Franks*, on the other hand, provides that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-56. If, at that hearing, "the allegation of perjury or reckless disregard" is shown by the defendant and, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded." *Id*.  The Magistrate Judge found that Defendant had not met his burden to justify an evidentiary hearing related to his *Franks* challenge and stated that she would not consider the evidence presented at the December 5, 2025 hearing when conducting the *Franks* analysis.

*States v. Raddatz*, 447 U.S. 667, 674 (1980) (holding that 28 U.S.C. § 636 "calls for a de novo determination, not a de novo hearing"). Instead, the district court discharges its duty by, at a minimum, listening to a tape recording or reading a transcript of the evidentiary hearing. *See United States v. Azure*, 539 F.3d 904, 910–11 (8th Cir. 2008). Here, the Court has read the transcript of the hearing and has reviewed the exhibits. The Court has also reviewed all relevant filings and the briefing submitted by the parties. Having done so, the Court finds that Defendant's Objections should be overruled.

## DISCUSSION

To be constitutionally valid, "a search warrant must be supported by a showing of probable cause." *United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007). "Probable cause to issue a search warrant exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States. v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (quotation omitted). "The determination of probable cause is made after considering the totality of the circumstances." *Id*.

The decision of whether probable cause exists to issue a search warrant is "based upon a common-sense reading of the entire affidavit." *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quotation omitted). "[T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (internal quotations omitted). "After a judge has issued a search warrant upon a finding of probable cause, that finding deserves great deference." *Proell*, 485 F.3d at 430 (internal quotation omitted). Thus, a court "should uphold the decision to issue the warrant so long as it is supported by substantial evidence in the record." *United States v. Hallam*, 407 F.3d 942, 948 (8th Cir. 2005) (quotation omitted).

Defendant challenges the Magistrate Judge's determination that the warrant for the Residence and Vehicle was supported by probable cause. Defendant argues that once the information about the June 23, 2023 stop and search of the Escalade is removed from the affidavit, probable cause does not exist for issuance of the warrant. Defendant further contends that

4

information used to support issuance of the warrant was stale and that were was no nexus between the places to be searched and the alleged contraband.  The Court finds Defendant's arguments unpersuasive.

### 1.  Probable Cause and Staleness

Defendant disputes the Magistrate Judge's finding that probable cause existed for issuance of the warrant even after references to the June 23, 2023 traffic stop and search were removed.[2] Defendant argues that social media posts that occurred on April 5, 2023, April 6, 2023, two posts on April 8, 2023, April 19, 2023, and April 14, 2023 were stale because they occurred 20 months before the warrant was issued and, therefore, could not be used in evaluating probable cause. Investigator Villamonte stated that the April posts suggested that Defendant was involved in the sale of marijuana.  (Filing No. 46-3; Ex. 3.) Defendant notes that no activity in the investigation was documented in the affidavit between the end of April 2023 until December 2024, when a few other social media posts occurred.  Defendant maintains these later social media posts (from December 2024 and January 2025), as well as information obtained from confidential informants in December 2024, do not rehabilitate the April social media posts and were insufficient alone to establish probable cause.

It is well-established that "[s]tale information cannot be considered when assessing probable cause." *United States v. Keiter*, No. 4:13CR3004, 2013 WL 2450717, at *6 (D. Neb. May 23, 2013). "A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *United States v. Huyck,* 849 F.3d 432, 439 (8th Cir. 2017) (quotation omitted). However, "[t]here is no bright-line test for determining when information in a warrant is stale." *Id*.  Instead, courts must look to "the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search." *Id*.

"[L]apse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." *United States v. Lemon,*

---

[2] Defendant does not contest the Magistrate Judge's finding that law enforcement would have applied for the warrant regardless of the June 23, 2023 stop.  (Filing No. 62.)

590 F.3d 612, 614 (8th Cir. 2010) (quoting *United States v. Horn*, 187 F.3d 781, 786 (8th Cir. 1999)). Indeed, "[i]n investigations of ongoing narcotic operations, intervals of weeks or months between the last described act and the application for a warrant does not necessarily make the information stale." *United States v. Davis*, 867 F.3d 1021, 1028 (8th Cir. 2017) (quotation omitted). Also, "where recent information corroborates otherwise stale information, probable cause may be found." *United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir. 1995) (quotation omitted).

There is no dispute that Investigator Villamonte's affidavit referenced social media posts that occurred twenty months prior to the issuance of the warrant. Excluding the information about the traffic stop and search in June 2023, there is no activity mentioned in the affidavit from April 2023 until December 2024. However, this lapse of time is less significant to the staleness determination because Defendant was the subject of an ongoing narcotics investigation, which dated back to 2018. Investigator Villamonte stated in his affidavit that he was familiar with Defendant through past narcotics investigations, as well as a federal indictment where Defendant was found to be a felon in possession of ammunition. (Filing No. 46-3; Filing No. 52; Ex. 3.) Investigator Villamonte explained at the evidentiary hearing that he started monitoring Defendant's social media accounts in 2018, and he did so until Defendant was incarcerated on another matter. (Filing No. 52.) Investigator Villamonte began monitoring Defendant's social media accounts again in April 2023, following Defendant's release from incarceration. (Filing No. 46-3; Ex. 3.)

In addition to the continuing nature of the investigation, the information from December 2024 through January 2025 described in the affidavit corroborates the social media posts from April 2023 and provides additional grounds upon which to find probable cause. *See Ozar*, 50 F.3d 1446. In his affidavit, Investigator Villamonte described a post to Defendant's Snapchat account from December 28, 2024, depicting Defendant with what "appears to be a residence with the handle of a handgun protruding out of his pocket as well as an extended magazine attached to the firearm." (Filing No. 46-3; Ex. 3.) The affidavit also described a video posted to Instagram on December 30, 2024, showing Defendant wearing "what appears to be a bullet proof vest and in possession of a handgun similar to a Glock with an after-market slide and a light attached to it." (Filing No. 46-3; Ex. 3; Ex. 106.) Investigator Villamonte stated in his affidavit that based on his

investigative experience, it is common for individuals to display and possess firearms on social media when they are involved in the sale of controlled substances. (Filing No. 46-3.) Investigator Villamonte's affidavit further indicated Defendant was a convicted felon with past charges related to being a felon in possession of ammunition. (Filing No. 46-3.)

Defendant argues the December 2024 posts do not corroborate the posts from April 2023 because Investigator Villamonte could not definitively identify the items as real firearms (as opposed to replicas) and because Investigator Villamonte knew Defendant was involved in producing rap music videos and that firearm "props" can be used in rap videos—which are facts omitted from the affidavit. (Filing No. 52.) The Court finds these arguments unpersuasive. Investigator Villamonte testified that he believed the firearms depicted were real. (Filing No. 52.) Whether Investigator Villamonte knew Defendant was involved in rap videos or that Defendant was not located at the Residence when a video from social media was filmed (another fact omitted from the affidavit),[3] is irrelevant. From the Court's review, it appears the firearms shown on the screenshots of the social media posts are authentic. It certainly was not unreasonable for Investigator Villamonte (or any other reasonable person) to think so—regardless of whether he knew replica firearms are sometimes used in rap videos.

Investigator Villamonte's affidavit also references a Snapchat post made by Defendant on January 9, 2025, with the caption "LMK" and several cell phone emojis with arrows pointing to them. (Filing No. 46-3; Ex. 3; Ex. 105.) The post also had emojis of an individual running, a bag of money, and a puff of smoke. (Ex. 105.) Investigator Villamonte testified at the evidentiary hearing that based on his training and experience, emojis of this nature are indicative of narcotic sales. (Filing No. 52.) Investigator Villamonte stated in his affidavit that, through this post, Defendant was asking people to call him to purchase controlled substances. (Filing No. 46-3; Ex. 3.) Investigator Villamonte also testified at the evidentiary hearing that this post was advertising controlled substances. (Filing No. 52.)

---

[3] Investigator Villamonte testified that he would have followed up about the firearms regardless of where Defendant possessed them because Defendant was a convicted felon. (Filing No. 52.)

7

In short, Investigator Villamonte was aware that Defendant was a convicted felon and observed two social media posts of Defendant posing with firearms. Excluding the April posts, he also observed a post which, based on his experience, was soliciting marijuana sales. The posts from December 2024 and January 2025 supported a probable cause determination.

Moreover, Investigator Villamonte's investigation revealed more than social media activity. Investigator Villamonte's affidavit explained that he had contact with two confidential informants on December 30, 2024, both of whom had provided "consistent, corroborating information in the past." (Filing No. 46-3; Ex. 3.) Each of these informants stated that Defendant "was a source for marijuana" and one informant stated Defendant was also a source for THC cartridges. (Filing No. 46-3; Ex. 3.) Defendant argues the information from the confidential informants cannot supply probable cause because the information is generalized and the affidavit does not state any specific dates as to when Defendant was an alleged "source." Although Investigator Villamonte's affidavit does not indicate the timeframe in which Defendant was an alleged source, the omission of this information is of little consequence given the other evidence showing a continuing pattern of behavior consistent with drug sales.[4] *See United States v. Formaro, 152 F.3d 768 (8th Cir. 1998)* (stating that the court was "not convinced that the lack of specific dates [or number of buys] deprived the [judge] of essential information in determining probable cause") (quotation omitted); *United States v. Trisdale, No. 8:01CR256, 2002 WL 202083, \*3 (D. Neb. Feb. 8, 2002)* (finding that the state court judge had sufficient evidence, without the dates of specific buys, to support a finding that an informant had provided reliable information). A statement of timeframe was not essential to a probable cause determination under the totality of the circumstances in this case.

Given the ongoing criminal investigation into Defendant, the nature of Defendant's suspected criminal activity, and other evidence gathered just weeks before the warrant was issued, the Court concludes the warrant was not stale. *See United States v. Palega, 556 F.3d 709 (8th Cir. 2009)* (finding that although some of the information provided in the warrant affidavit was more than two years old, there was also recent information that revealed an ongoing pattern of behavior,

---

[4] The information from the confidential informants—regardless of the timeframe—offers further support to Investigator Villamonte's belief that the January social media post was an invitation to purchase narcotics.

8

and when taken as a whole, the information was not stale).  Viewing the totality of circumstances, it is clear to the Court that a reasonable person could suspect that a search of the Residence and Vehicle would uncover evidence of crime and probable cause existed for issuance of the warrant.

### 2.  Nexus

Defendant argues that the affidavit did not establish a nexus between the Residence and the contraband, which renders the warrant invalid.  As to nexus, the affidavit stated that investigators observed Defendant arrive at the Residence on numerous occasions, and that Defendant entered the apartment without knocking and changed his clothes before leaving.  (Filing No. 46-3; Ex. 3.) The affidavit also noted that utilities for the apartment were paid by Defendant's grandmother. (Filing No. 46-3; Ex. 3.)  The affidavit stated that Defendant was observed driving the Vehicle. (Filing No. 46-3; Ex. 3.)  Defendant maintains that none of these facts establish that narcotics or firearms were stored or present in the Residence.

There must be evidence of a nexus between the contraband and the place to be searched. United States v. Randle, 39 F.4th 533, 536 (8th Cir. 2022). "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." United States v. Colbert, 828 F.3d 718, 726 (8th Cir. 2016) (quotation omitted).

Law enforcement had gathered information from social media and reliable confidential informants that Defendant was allegedly involved in drug and firearm activity.  Investigator Villamonte stated that based on his training and experience, individuals involved in the sale of narcotics typically use a vehicle to transport their narcotics and use their residence and/or places they commonly frequent to store controlled substances. (Filing No. 46-3.) Investigators observed Defendant enter and exit the Residence on several occasions without knocking and were aware that Defendant's grandmother paid expenses for the Residence.  The nature of the suspected crimes, as well as the reasonable and logical likelihood of locating narcotics and firearms based on the officers' observations, supplied the requite nexus for issuance of the warrant to search the Residence and Vehicle.

### 3.   Good Faith Exception

Even if the warrant was not supported by probable cause, the evidence seized would nevertheless be admissible under the *Leon* good-faith exception to the exclusionary rule.  "Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable."  *Proell*, 485 F.3d at 430.  A "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization." *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (quotation omitted).

An officer's reliance on a warrant may be said to be unreasonable in four circumstances: (1) when the affidavit supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for the truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when it is entirely unreasonable to believe that an affidavit provides probable cause to issue a warrant; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. *Proell*, 485 F.3d at 431 (quotation omitted). "[W]hen assessing the officer's good faith reliance on a search warrant under the *Leon* good faith exception, [courts] can look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit. *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014).

Here, there is no evidence that the affidavit contained false information, nor is there any indication that the issuing judge abandoned his judicial role.  Also, for the reasons explained above, it was not entirely unreasonable for an officer to believe that the affidavit provided probable cause to issue the warrant.  The affidavit outlined Defendant's social media activity and the information obtained from the confidential informants.  Even including the omitted information—Defendant's involvement with rap videos, the location of where the videos were filmed, and the confidential informants' failure to provide a timeline for Defendant's alleged involvement with drug activity— and excluding the information about the June 2023 stop and April social media posts, it was not

10

unreasonable for an officer to believe that probable cause existed.[5]   Therefore, the good faith exception to the exclusionary rule applies and Defendant's Objections will be overruled.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Objection (Filing No. 62) and Supplemental Objection (Filing No. 75) to the Magistrate Judge's Order are overruled.

2. The Magistrate Judge's Findings and Recommendation (Filing No. 53) is adopted in its entirety.

3. Defendant's Motion to Suppress (Filing No. 31) is denied.

4. This matter will be set for trial by separate order.

Dated this 26th day of June, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge

---

[5] The Court notes that Investigator Villamonte testified that before a warrant is presented to a judge, his supervisor and the legal department advisor reviews it to make sure they agree with what Investigator Villamonte is requesting. (Filing No. 52.)  Investigator Villamonte stated he had no inclination or concern that he did not have probable cause when he went to serve the warrant.  (Filing No. 52.)